**FILED**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
*ORLANDO DIVISION*

SEP 2 7 2016

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re: )
)
**ZORNA SIMONE CORBIN** )
)
*Debtor* )
)

Case No.: **6:16-BK-02047-CCJ**

Chapter 13

**ZORNA SIMONE CORBIN** )
)
*Plaintiff* )
)
vs. )
)
**WELLS FARGO BANK, N.A.** )
)
*Defendant(s).* )
)
)

Adversary No. _____

## VERIFIED ADVERSARY COMPLAINT

    **COMES NOW**, Plaintiff, **ZORNA SIMONE CORBIN**, (hereinafter: "Plaintiff" or "ZORNA"), and sues Defendant(s) WELLS FARGO BANK N.A. (hereinafter: "Wells Fargo"), and alleges the following:

### I. JURISDICTION AND VENUE:

1. This adversary proceeding is brought pursuant to 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 7001.

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§151, 157 and 1334(b).

3. Venue is proper pursuant to 28 U.S.C. §1409 and Local Rule 1071-1 of the United States Bankruptcy Court for the Middle District of Florida.

4. This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and validity of an interest in property evidenced by a trustee deed, and the allowance or disallowance of a claim.

This is a core proceeding pursuant to 28 U.S.C. § 157(b), and jurisdiction exists pursuant to 11 U.S.C. § 502 (a) and (b) (1), 11 U.S.C. § 544 (a) (3) and (b) (1), 28 U.S.C. 1334, 28 U.S.C. 2201 for declaratory relief and 28 U.S.C. 1367 for pendent state claims.

5.  This Court has subject matter jurisdiction to hear this controversy.  The Controversy involves a federal question.

6.  This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, 42 U.S.C. §5 1983 which confer original jurisdiction on federal district courts, in suits to address the deprivation of rights secured by federal law.

7.  This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

## II.  PERSONAM JURISDICTION OVER THE PARTIES

8.  At all relevant times, WELLS FARGO BANK N.A., claims to be organized under the laws of FLORIDA, and conducts business in this district.

9.  Zorna Corbin is an Individual and is the Plaintiff in this lawsuit.

10.  Zorna Corbin is an Individual having standing to bring this action pursuant to 11 U.S.C. 323.1302 and 1330.

## GENERAL ALLEGATIONS

11.  Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant(s) acted individually and jointly with the other Defendant(s).

12.  Any allegation about acts of any corporate or other business Defendant(s) means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

13.  At all relevant times, Defendant(s) committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.

14. At all relevant times, Defendant(s) knew or realized that they were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that Defendant(s) was engaging in or planning to engage in unlawful conduct, Defendant(s) nevertheless facilitated the commission of those unlawful acts.

15. On or about 3/21/2006, Plaintiff acquired an interest in the real property particularly described in Exhibit "A".

16. As her obligation, a buy-sell transaction between Plaintiff and Seller, Plaintiff paid the seller in full for the property.

17. In exchange for full payment for the property by Plaintiff, Mortgagee issued a mortgage to Plaintiff.

18. The mortgage from Mortgagee is recorded in the record Book W, page 103, of ORANGE County.

19. On or about 3/21/2006, Plaintiff attempted to enter into a transaction with WORLD SAVINGS AND LOAN (hereinafter "WORLD SAVINGS"). Plaintiff was to sign a promissory note and mortgage in exchange for WORLD SAVINGS funding said note.

20. WORLD SAVINGS failed to fulfill its obligation despite the fact that Plaintiff fulfilled her part by delivering an executed promissory note and mortgage to WORLD SAVINGS.

21. As a result of WORLD SAVINGS failing to fulfill its obligation, **the transaction was never consummated.**

22. With title to her property clouded, Plaintiff looked for a remedy that she can obtain without resorting to court.

23. The Truth In Lending Act (TILA) provides such a remedy upon the mailing of a Notice of Rescission.

24. On or about 12/10/2008, Plaintiff sent her Notice of Rescission.

25. WORLD SAVINGS failed to respond to Plaintiff's Notice of Rescission.

26. As a result of WORLD SAVINGS failure to respond within twenty (20) days of the mailing of the notice, Plaintiff's title became unencumbered by mortgage, in favor of Plaintiff.

27. On January 18, 2013, as a debt collection activity, WELLS FARGO began a judicial foreclosure proceeding against Plaintiff's property.

28. Michael L. Tebbi, acting as an attorney for WELLS FARGO, filed the action in furtherance of efforts to collect alleged debt.

29. On 3/29/2016, Plaintiff filed a petition under Chapter 13 of the United States Bankruptcy Code.

30. An automatic stay was imposed upon Plaintiff's filing of the petition under Chapter 13 of the United States Bankruptcy Code.

31. Defendant(s) knew, or should have known, that they were collecting on an account with a zero balance, and on a lien than has been rescinded, and as a result satisfied.

32. Defendant(s) knew, or should have known, that they were attempting to collect a debt that cannot be legally collected.

33. Defendant(s) knew, or should have known, the claims they filed in the bankruptcy Court were false claims, and subject to civil liability for each false claim, if they filed a false PROOF OF CLAIM in the bankruptcy court.

34. Defendant(s) knew they would be subject to a civil liability in an amount up to $500,000.$^{00}$ for each false claim, if they filed a false PROOF OF CLAIM in the bankruptcy court.

35. The claims filed by Defendant(s) in the federal and state courts are fraudulent documents, and the filing of the document was created for the purpose of facilitating, aiding and abetting the illegal, deceptive, and unlawful collection of payments, as well as engaging in other debt collection activities.

36. Defendant(s) is fraudulently enforcing a **non-existing** debt obligation in which they can have no pecuniary, equitable or legal interest. Thus, Defendant(s)' conduct is part of a fraudulent debt collection scheme.

37. The conduct described above by Defendant(s), was malicious because Defendant(s) knew that they were acting without the prerequisite authority from a valid and relevant debt, and that there was no amount due and owing to Defendant(s). However, despite such knowledge, Defendant(s) continued to demand payments from Plaintiff.

38. As a direct and proximate result of the actions of the Defendant(s) set forth above, Plaintiff's credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting showing the foreclosure, Plaintiff is unable to refinance their equity, buy another property, or sell their home.

39. As a direct and proximate result of the actions of the Defendant(s) set forth above, the title to Plaintiff's home and other real property has been slandered, clouded, and its salability has been rendered unmarketable.

40. As a direct and proximate result of the actions of the Defendant(s), as set forth above, Plaintiff does not know the status of the title to her Property, such that it is now subject to financial jeopardy.

41. Defendant(s), as alleged by Plaintiff, is **not a creditor** of the Plaintiff, and therefore has no loan receivable from the Plaintiff, or in the alternative, they are required to comply with **lawful** collection practices as defined by state and federal statutes.

42. Defendant(s) do not possess a loan receivable from the Plaintiff, nor have the Defendant(s) complied with Federal and State statutes, consistent with being a creditor or debt collector.

43. The Defendant(s) has never possessed, any legal right, justification, or excuse for asserting a secured interest in the Plaintiff's Property on their own behalf.

44. Notwithstanding the above, Defendant(s) continue to act as though Defendant(s) is a secured creditor, and has extracted funds from Plaintiff under duress and intimidation.

45. Plaintiff has a right, as a seller, or in refinancing the properties, to warranty title, and to know, with the certainty required in all real estate transactions, whether the party providing estoppel information for payoff, and who receives the proceeds of a subsequent closing, and who issues a satisfaction of mortgage, is the correct party to do so. If that right is not recognized, then Plaintiff is forced to either not sell or not refinance because of a clouded title that was not clouded through her own doing.

46. As a direct and proximate result of the above, together with other actions taken by the Defendant(s) to collect on an obligation that is owed to others, the Plaintiff's property is under a cloud of title claims and potential claims, all created by the Defendant(s), and have suffered damages to their credit, and reputation generally.

47. Plaintiff is unable to clear up the title, since the Defendant(s) continue to assert claims of creditor status, and a claim of secured interest, arising from the bogus mortgage and note that Plaintiff was induced to execute, and has subsequently rescinded, satisfied or settled.

48. As of proximate result of the Defendant(s)' unlawful actions, Plaintiff continues to suffer the irreparable harm described above for which monetary compensation is inadequate.

49. Defendant(s) is using the rescinded documents to take and retain undisclosed fees, profits and compensation as defined under the federal Truth in Lending Act from the money advanced by the investor-lenders, including a tier 2 yield spread premium in which more money was advanced by investor-lenders than was used to fund or acquire mortgages, all of which are due to Plaintiff, far in excess of $15,000, plus treble damages, attorney's fees, and costs of this action.

50. The actual bona fide controversy is that Plaintiff have suffered credit damage from a party who has no rights to enforce a rescinded loan transaction, is threatened with a sale of her homestead and eviction, and cannot promise clear title in any sale or refinance of her property due to the issues described above.

51. As a direct and proximate result of the above, Plaintiff had been forced to pay money that is not due to Defendant(s).

52. Defendant(s) did not return to Plaintiff all monies paid, including interests, appraisal fees and the other costs, pursuant to the Truth In Lending Act and Regulation Z.

53. Defendant(s) failed to return the Note to Plaintiff pursuant to the Truth In Lending Act (TILA) and Regulation Z.

54. Defendant(s) did not initiate an action within the required twenty (20) days, and to declare whether any monies should be paid by Plaintiff to Defendant(s).

55. Plaintiff is entitled to receive the Note and monies paid on the rescinded transaction, pursuant to the Truth In Lending Act and Regulation Z.

56. In spite of receiving notice of the TILA rescission notice, Defendant(s), contacted Plaintiff via U.S. mail in an effort to collect a debt, contrary to the form of 15 U.S.C. Section § 1692 , for which reason Plaintiff is entitled to statutory damages.

57. Defendant(s) is a "debt collector" within the meaning of 15 U.S.C. Section § 1692a(6) and 15 U.S.C. § 1601 et. seq., the Fair Debt Collector Practices Act (FDCPA), in that it uses the mail system in a business, the primary purpose of which, is the collection of debts.

58. Defendant(s) is a "debt collector" within the meaning of the FDCPA in that it uses the mail in a business the primary purpose of which is the collection of debts.

59. On or January 18, 2013, WELLS FARGO filed an action against Plaintiff to foreclose on the rescinded Note and Mortgage related to the Plaintiff's Property.

60. The mortgage loan is the debt upon which illegal collection activity took place. The case number in the foreclosure action is 48-2013-CA-000988-O.

61. On or about 3/29/2016, a petition in Bankruptcy Court in the District of FLORIDA was filed by the Plaintiff. The Bankruptcy Court served this Petition upon Defendant(s). The case number for the bankruptcy action is Case 6:16-bk-02047-CCJ.

62. On or about March 30, 2016, the Bankruptcy Court served upon the Defendant(s), a Notice of Commencement of Case (See attached Notice of Commencement). This document describes that an automatic stay from creditor action is in place, prohibiting certain collection action, as follows:

> Prohibited collection actions are listed in Bankruptcy Code §362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.

63. Federal Bankruptcy law at 11 U.S.C. § 362 provides for an automatic stay from creditor action upon the filing of a petition in bankruptcy, to wit:

   (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;  . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;  . . .

(k)(1)  Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

64.  The Bankruptcy Code § 362(k) is intended to hold creditors accountable for injuries caused by willful violations of the automatic stay. In re *Wingard*, 382 B.R. 892, 900 (Bankr. W.D. Penn. 2008).

65.  The Fair Debt Collection Practices Act "FDCPA", states in 15 U.S.C. §1692(e):

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:" including (2) The false representation of,

    a.   the character, amount, or legal status of any debt; or

    b.   any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

66.  Additionally, a debt collector may not represent or imply "*that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.*"  15 USC § 1692(e)(4) (emphasis added).  Thus, it is not the filing of a foreclosure action that could arguably be a violation of this statute, but the threat to do so, and the unlawfulness of such actions, which Defendant(s) has engaged in.

67. Other restrictions on debt collection include:   "(8) *Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed*."    15 USC §1692(e)(emphasis added).

68. Plaintiff, as a proximate result of Defendant(s)' acts and conduct as described above, has sustained economic damage in excess of $15,000, for which the Plaintiff is entitled to compensation from the Defendant(s), including but not limited to excess interest, principal, and fees and costs associated with exposing this scheme and clearing her title.

   **WHEREFORE**, Plaintiff moves and requests this Court to award Plaintiff actual, statutory, consequential, compensatory, punitive and special damages from Defendant(s), individually jointly and severally, whichever is greater, attorney fees and costs, and for all other relief to which this Court finds that Plaintiff(s) is entitled to.

   Dated: September 26, 2016

   *Respectfully Submitted,*

   **Zorna Corbin**
   8121 Meadowglen Drive
   Orlando, Florida  32810
   407-497-9659

# Exhibit A

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: ▆▆▆▆▆▆

NOTE AMOUNT: $108,000.00

RETURN TO:
CHELSEA TITLE COMPANY
400 E. SEMORAN BLVD. STE. 109
CASSELBERRY, FL 32707

INSTR 20060205890
OR BK 08557 PG 0952 PGS=15
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
03/30/2006 01:37:20 PM
MTG DOC TAX 378.00
INTANG TAX 216.00
REC FEE 129.00

FOR RECORDER'S USE ONLY

## MORTGAGE

THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR BIWEEKLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS $135,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.  DEFINITIONS OF WORDS USED IN THIS MORTGAGE
    (A)  Security Instrument. The Mortgage, which is dated March 18, 2006 will be called the "Security Instrument."

    (B)  Borrower. WALLACE CORBIN AND ZORNA CORBIN, HUSBAND AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)  Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is  1901 Harrison Street, Oakland, CA 94612 .

    (D)  Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S.  $108,000.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in full by April 10, 2036 .

    (E)  Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

    (F)  Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

    (G)  Person. Any person, organization, governmental authority or other party will be called "Person."

SD010A (2004-10-1)
DEFERRED INTEREST

MORTGAGE-ADJUSTABLE
Page 1

FL

0 0 3
LENDER'S USE ONLY

## II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I mortgage, irrevocably grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(i)  pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)  pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)  keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III. DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described below:

(i)  The property which is located at **8121 MEADOWGLEN DR, ORLANDO, FL 32810-2437.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)  All buildings and other improvements that are located on the Described Property;

(iii)  All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)  All rents or royalties and other income from the Described Property;

(v)  All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)  All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)  All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)  All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)  All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)  All of the amounts that I pay to Lender under Paragraph 2 below.

## IV. BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give Lender a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.   **BORROWER'S PROMISE TO PAY**
     I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   **PAYMENTS FOR TAXES AND INSURANCE**
     **(A)   Borrower's Obligations**
     I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

     **(B)   Escrow Accounts**
     Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

     The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

     If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

     Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD010C (2004-10-1)                MORTGAGE-ADJUSTABLE                                         FL
                                        Page 3

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to

SD010D (2004-10-1)                              MORTGAGE-ADJUSTABLE                              FL
                                                      Page 4

Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

SD010E (2004-10-1)                    MORTGAGE-ADJUSTABLE                    FL
                                              Page 6

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8. LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A) Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B) Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even If Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 27 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12. MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13. LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **8121 MEADOWGLEN DR, ORLANDO, FL 32810-2437**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section 1.(C) above entitled, "Definitions of Words Used in This Mortgage," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master or blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master or blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master or blanket** policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.   FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

### 27.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to, attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

### 28.    LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument without charge to me except that I will pay any recordation costs.

**29. STATEMENT OF OBLIGATION**

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

**30. WAIVER OF MAXIMUM ADVANCE**

I waive the right to record a notice allowed by Florida Statute 697.04 (1)(b), as it may be amended, limiting the maximum principal amount which may be secured by this Security Instrument; if I do record such a notice, it will be a Breach of Duty.

**31. ATTORNEY'S FEES**

The term attorney's fees as used in the Secured Notes or in this Security Instrument shall include any attorney's fees allowed by an appellate court.

**32. RIDERS TO THIS SECURITY INSTRUMENT**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**33. ( X ) QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**34. ( X ) OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

WITNESS(ES):

_____

BORROWER(S): M. Mendez

_Wallace Corbin_          (Seal)
**WALLACE CORBIN**

★
_Lorna S. Corbin_          (Seal)
LORNA CORBIN

★ 8121 Meadowglen Dr
Orlando, FL 32810

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

THIS INSTRUMENT PREPARED BY:    **DORRIE BRENNAN**
                                **P.O. BOX 659548**
                                **SAN ANTONIO, TX 78265-9548**

SD010 (2004-03-1)
        [X29 (2004-03-1)]                Page 13                        FL

## NOTARY PUBLIC ACKNOWLEDGEMENT ADDENDUM

State of FLorida
County of Seminole

I am a notary public of the State of Florida , and my commission expires: 12/11/2008
THE FOREGOING INSTRUMENT was acknowledged before me on 03/21/2006 by:
ZORNA CORBIN and WALLACE CORBIN, wife and husband

who is personally known to me or who has produced  as identification and who  take an oath.

Notary Seal

Signature _____
Print Name _____
Notary Public

NICHOL A. PENNOCK
Notary Public, State of Florida
My comm. exp. Dec. 11, 2008
Comm. No. DD 370670

# WORLD SAVINGS

### E X H I B I T "A"

### LEGAL DESCRIPTION

LOAN NO. 

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **ORANGE** STATE OF **FLORIDA**, DESCRIBED AS FOLLOWS:

```
    LOT(S) 81, PLANTATION UNIT THREE, ACCORDING TO THE PLAT THEREOF, RECORDED
 IN PLAT BOOK W, PAGE(S) 103, OF THE PUBLIC RECORDS OF ORANGE COUNTY,
 FLORIDA.
```

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

SD010 (2003-03-1)                    Page 14 of 14                    **FL**

## VERIFICATION

I, Zorna Corbin, am the Plaintiff in this action.  I have read the above Verified Adversary Complaint, and I have personal knowledge of the matters stated herein except as to those matters stated upon information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of Florida, that the foregoing is true and correct as executed this 26th Day of September 2016, in the City of Orlando, Orange County.

Zorna Corbin

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing,

## **VERIFIED ADVERSARY COMPLAINT**

have been furnished by regular U.S. Mail postage paid, to all parties listed this 26th day of September, 2016.

Laurie K Weatherford
PO Box 3450
Winter Park, FL 32790

_Zorna Simone Corbin_
Zorna Simone Corbin

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Zorna Simone Corbin | **DEFENDANTS**<br>WELLS FARGO BANK, N.A. |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>8121 Meadowglen Drive<br>Orlando, FL 32810<br>407-497-9659 | **ATTORNEYS** (If Known)<br>unknown at this time | **RECEIVED**<br>SEP 2 7 2016<br>CLERK, U.S. BANKRUPTCY<br>ORLANDO, FL |
|---|---|---|

| **PARTY** (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Trustee  ☐ Other | **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Trustee  ☑ Other |
|---|---|

**CAUSE OF ACTION**  (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Truth In Lending Act 15 U.S.C. Section § 1692 and Regulation Z, § 226.23, and 15 U.S.C. § 1601 et. seq. the Fair Debt Collector Practices Act, or FDCPA

## NATURE OF SUIT
(Number up to five (5) boxes starting with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| **FRBP 7001(1) – Recovery of Money/Property** | **FRBP 7001(6) – Dischargeability (continued)** |
|---|---|
| [3] 11 - Recovery of money/property - § 542 turnover of property | ☐ 61 - Dischargeability - § 523(a)(5), domestic support |
| ☐ 12 - Recovery of money/property - § 547 preference | ☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury |
| [2] 13 - Recovery of money/property - § 548 fraudulent transfer | ☐ 63 - Dischargeability - § 523(a)(8), student loan |
| ☐ 14 - Recovery of money/property - other | ☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support) |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | ☐ 65 - Dischargeability - other |
| ☐ 21 - Validity, priority or extent of lien or other interest in property | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001(3) – Approval of Sale of Property** | ☐ 71 - Injunctive relief - imposition of stay |
| ☐ 31 - Approval of sale of property of estate and of a co-owner - § 363(h) | ☐ 72 - Injunctive relief - other |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | **FRBP 7001(8) – Subordination of Claim or Interest** |
| ☐ 41 - Objection/revocation of discharge - § 727(c), (d), (e) | ☐ 81 - Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation** | **FRBP 7001(9) – Declaratory Judgment** |
| ☐ 51 - Revocation of confirmation | [1] 91 - Declaratory judgment |
| **FRBP 7001(6) – Dischargeability** | **FRBP 7001(10) – Determination of Removed Action** |
| ☐ 66 - Dischargeability - § 523(a)(1), (14), (14A) priority tax claims | ☐ 01 - Determination of removed claim or cause |
| ☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud | **Other** |
| ☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ SS-SIPA Case - 15 U.S.C. §§ 78aaa et. seq. |
| **(continued next column)** | ☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  450,000.00 |

Other Relief Sought
Declatory Judgment, Reconveyance of real property to Debtor.

B104 (FORM 104) (8/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>　Zorna Simone Corbin | | BANKRUPTCY CASE NO.<br>**6:16-bk-02047-CCJ** |
| DISTRICT IN WHICH CASE IS PENDING<br>　Middle District of Florida | DIVISION OFFICE<br>　Orlando | NAME OF JUDGE<br>　Cynthia Jackson |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>　n/a | DEFENDANT<br>　n/a | ADVERSARY PROCEEDING NO.<br>**n/a** |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>　n/a | DIVISION OFFICE<br>　n/a | NAME OF JUDGE<br>　n/a |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| by: *Zorna J. Corbin* | |
| DATE<br>September 26,2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>　Zorna Simone Corbin |

## INSTRUCTIONS

　　　The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

　　　A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

　　　The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.**　Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**　Give the names and addresses of the attorneys, if known.

**Party.**　Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**　Enter the dollar amount being demanded in the complaint.

**Signature.**　This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.