UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

ZORNA SIMONE CORBIN,　　　　　　　　　　　Case No.: 6:16-bk-02047-CCJ
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　　Debtor.
_____

ZORNA SIMONE CORBIN,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Case No.: 6:16-ap-00090-CCJ

WELLS FARGO BANK, N.A.,

　　　　Defendant.
_____

**NOTICE OF OPPORTUNITY TO
OBJECT AND FOR HEARING**

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice of hearing unless a party in interest files a response within fourteen (14) days from the date set forth on the proof of service attached to this paper plus an additional three days for service if any party was served by U.S. mail.  If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at 400 W. Washington Street Suite 5100. Orlando, FL 32801, and serve a copy on the movant's attorney, Anna Haugen, Esq., McGuireWoods LLP, 50 N. Laura Street, Suite 3300, Jacksonville, Florida 32202; and United States Trustee, 400 West Washington Street, Suite 1100, Orlando, FL 32801 and any other appropriate persons within the time allowed.

If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.  If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper, without further notice or hearing, and may grant the relief requested.

**DEFENDANT WELLS FARGO BANK. N.A.'S AMENDED MOTION
TO DISMISS VERIFIED ADVERSARY COMPLAINT**

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),[1] moves this Court to dismiss the Verified Adversary Complaint ("Complaint") (D.E. 1)[2] filed by Plaintiff Zorna Simone Corbin ("Plaintiff").[3] In support, Wells Fargo states as follows:

**INTRODUCTION**

Plaintiff filed this adversary proceeding in an attempt to invalidate Wells Fargo's secured lien on her primary residence. However, the factual basis underlying Plaintiff claims and many, if not all, of Plaintiff's legal claims here, have already been litigated, or could have been litigated, in a prior mortgage foreclosure action filed by Wells Fargo that resulted in a final judgment of foreclosure that has been affirmed on appeal. As the issues in this Complaint pertain to issues determined in the state-court foreclosure action, the Complaint should be dismissed in its entirety for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Alternatively, Plaintiff's claims are barred by the doctrine of res judicata and should be dismissed with prejudice. Lastly, Plaintiff's assertion that the filing of the Foreclosure Action violated the automatic stay imposed by the filing of the

---

[1] These rules are made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b).
[2] Unless otherwise stated, the docket citations in this Motion refer to the docket for the instant adversary proceeding.
[3] Plaintiff initiated this adversary proceeding on September 27, 2016 and Wells Fargo had until November 30, 2016 to file its response. (D.E. 6). On November 23, 2017, Plaintiff's bankruptcy case was dismissed. Around that time, counsel for Wells Fargo reached out to the Clerk's office and was advised that this adversary proceeding will be administratively closed due to the dismissal of Plaintiff's bankruptcy case. On November 30, 2017, Wells Fargo filed a Motion for Clarification and inquired if it was necessary to file a response pending the administrative closure of the adversary proceeding, while preserving its right to file a response. (D.E. 5). The Court set a hearing on the Motion for Clarification for June 15, 2017.

Bankruptcy Case in March 2016 is meritless because the Foreclosure Action, the Final Judgment, as well as the opinion affirming the Final Judgment and the mandate from the Fifth District Court of Appeal, predated the filing of the Bankruptcy Case.

## **FACTUAL ALLEGATIONS**

### I.     JUDICIALLY NOTICEABLE FACTS[4]

1. On March 21, 2006, Plaintiff and Wallace Corbin executed a mortgage ("Mortgage") in favor of World Savings Bank, FSB securing repayment of a promissory note ("Note") in the amount of $108,000.00 and encumbering real property located at 8121 Meadowglen Drive, Orlando, Florida 32810 ("Property"). The Mortgage was recorded on March 30, 2006 in Official Records Book 8557, at Page 952 of the public records of Orange County, Florida.

2. On January 18, 2013, Wells Fargo, the successor-in-interest to World Savings Bank, FSB, initiated an action to foreclose the Mortgage on the Property by filing a Verified Mortgage Foreclosure Complaint ("Foreclosure Complaint") in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Case No. 2013-CA-000988-0 (the "Foreclosure Action"). A copy of the Foreclosure Complaint and its exhibits, including copies of the Mortgage and Note, is attached hereto as **Exhibit 1**.

---

[4] Wells Fargo includes this section and requests, pursuant to Rule 201 of the Federal Rules of Evidence that this Court take judicial notice of various documents filed and entered in the related litigation. *See Oprix Credit Alliance v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d 722, 725 (11th Cir. 1995) (noting that a court "may take judicial 'notice of another court's order … for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation and related filings'") (internal quotation marks omitted). In any event, as Wells Fargo raises a challenge to the Court's subject matter jurisdiction, it is permissible for this Court to consider documents outside the four corners of the Complaint. *See Stalley ex rel. United States v. Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). Furthermore, the Court can consider these documents on a motion to dismiss under Rule 12(b)(6), as they are central to Plaintiff's claims and their authenticity cannot reasonably be challenged. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

3. Wells Fargo initiated the Foreclosure Action because there was a default under the Note and Mortgage as the installment due on the April 1, 2012 and all subsequent payments had not been made. (Ex. 1 at 1). In the Foreclosure Complaint, Wells Fargo alleged that it was entitled to foreclose the Mortgage on the Property based on the default under the terms of the Mortgage. (Ex. 1 at 3). Wells Fargo requested that the court in the Foreclosure Action hold that the lien of Wells Fargo's Mortgage is the valid first lien on the Property and that it is superior to any lien of record. (Ex. 1 at 3). Furthermore, Wells Fargo requested that the court in the Foreclosure Action determine the amount due Wells Fargo under the Note and the Mortgage. (Ex. 1 at 3). Lastly, Wells Fargo requested that the court in the Foreclosure Action order that if the sum determined to be owed to Wells Fargo is not paid in full within the time set by the court in the Foreclosure Action, the Property be sold by order of the court to satisfy Wells Fargo's claims. (Ex. 1 at 3).

4. Plaintiff made an appearance in the Foreclosure Action and signed the Answer, Affirmative Defenses, Counterclaim and Demand for Jury Trial ("Answer") filed in the Foreclosure Action in her own name. A copy of the Answer, which bears Plaintiff's signature, is attached hereto as **Exhibit 2.** In the Answer, Plaintiff admitted to executing both the Mortgage and the Note. (*See* Ex. 2 ¶ 4). Nonetheless, through twenty-six affirmative defenses, Plaintiff challenged Wells Fargo's entitlement to enforce the Note and foreclose the Mortgage on various grounds, including: (i) failure of consideration for the loan transaction; (ii) lack of standing to foreclose; (iii) invalidity of the "false and fraudulent" Note and Mortgage; (iv) invalidity of indorsements to the Note; (v) separation of the Mortgage from the Note; (vi) unclean hands and fraud by Wells Fargo; and (vii) alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.

("FDCPA"), the Florida Consumer Collection Practices Act, § 559.55, et seq. ("FCCPA"), the Truth in Lending Act, 15 U.S.C. §§ 1641, et seq. ("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA"), and other statutes.  (Ex. 2 at 3-30). Plaintiff also asserted a seven-count Counterclaim based on a number of the same statutes and legal theories.  (Ex. 2 at 30-51).

5. Upon consideration of a motion filed by Wells Fargo, the court in the Foreclosure Action entered an order on January 16, 2014 striking the affirmative defenses and dismissing the Counterclaim. Copies of the motion, Plaintiff's response, and the court's order are attached hereto as **Composite Exhibit 3**.

6. The matter was subsequently set for trial, and following a non-jury trial held on April 23, 2014, the court entered a final judgment of foreclosure ("Final Judgment") in favor of Wells Fargo.  A copy of the Final Judgment is attached hereto as **Exhibit 4**.  In the Final Judgment, the court determined, among other things, that Wells Fargo "holds a lien … superior in dignity to any right, title, interest, or claims of any of the Defendants … upon the mortgaged property herein foreclosed … and commonly described as: 8121 MEADOWGLEN DR, ORLANDO, FL 32810."  (Ex. 4 ¶ 4).

7. On May 22, 2014, Plaintiff appealed the Final Judgment to the Fifth District Court of Appeal of Florida, and the appeal was docketed as Case Number 5D14-1835 on May 23, 2015 ("Appeal").  The Final Judgment was affirmed in a per curiam opinion dated December 15, 2015, and the Fifth District Court of Appeal entered a mandate on February 1, 2016 ordering that the court in the Foreclosure Action continue with further proceedings in accordance with its opinion.  A copy of the docket and relevant filings from the Appeal is attached hereto as **Composite Exhibit 5**.

## II.     PROCEDURAL HISTORY OF THE BANKRUPTY CASE

8.      On March 29, 2016, Plaintiff filed a voluntary petition ("Petition") in this Court seeking bankruptcy protection under Chapter 13 of the Bankruptcy Code ("Bankruptcy Case").  (Bankr. D.E. 1).  The Petition lists the Property as Plaintiff's place of residence.  (Bankr. D.E. 1 at 2).

9.      On April 25, 2016, Plaintiff filed her Chapter 13 Plan (the "Plan"), Statement of Financial Affairs, Schedules A-J ("Schedules"), and Statement of Current Monthly Income (Bankr. D.E. 12, 13).  Four days later, on April 29, 2016, the Chapter 13 Trustee filed a Motion to Dismiss for Failure to File a Feasible Chapter 13 Plan, and for Filing Incomplete Schedules.  (Bankr. D.E. 16).  In particular, the Trustee explained that the Plan, the Statement of Affairs, Statement of Monthly Income, and the majority of the Schedules were left blank.  (Bankr. D.E. 16 ¶ 3).  Wells Fargo also filed an objection to confirmation of the Plan on May 13, 2016 based on Plaintiff's failure to provide payment to the Trustee or any of her creditors.  (Bankr. D.E. 18).

10.     On July 19, 2016, Plaintiff filed an Amended Chapter 13 Plan (the "Amended Plan") and Amended Schedules A-J as well as Statement of Financial Affairs along with Statement of Current Monthly Income, but the documents were still incomplete and did not correct all the deficiencies identified by the Trustee or Wells Fargo.[5]  (*See* Bankr. D.E. 19, 20).

11.     On September 27, 2016, Plaintiff filed an Objection to Wells Fargo's Proof of Claim 4-1.  (Bankr. D.E. 29).  That same date, Plaintiff filed the instant Complaint that initiated this adversary proceeding.  (D.E. 1).

---

[5] The Court entered an order striking Schedules A-J without prejudice on July 20, 2016, and Plaintiff filed amended Schedules E-F on September 27, 2016 (the "Amended Schedules").  (Bankr. D.E. 21, 28).

6

12.     On November 23, 2016, the Court granted the Trustee's Motion to Dismiss after a hearing on November 15, 2016 (Bankr. D.E. 41, 42); however, the Bankruptcy Case was reinstated on April 28, 2017 upon consideration of a motion by Plaintiff, in which Plaintiff represented that she had been absent from the November 15, 2016 hearing due to illness.  (Bankr. D.E. 43, 50).  A confirmation hearing is currently scheduled for July 18, 2017.  (Bankr. D.E. 51).

### III.   SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT[6]

13.     Plaintiff purports to invoke this Court's jurisdiction over her one-count Complaint based on a number of federal statutes, including 11 U.S.C. § 506, 12 U.S.C. § 2605, 15 U.S.C. § 1962, 28 U.S.C. §§ 2201-2202, and 42 U.S.C. § 1983.[7]  (D.E. 1 ¶¶ 1, 6).

14.     In short, Plaintiff contends that Wells Fargo filed the Foreclosure Action without standing to do so, and that the underlying Note and Mortgage were invalid.  (*See generally* D.E. 1).  Although Plaintiff admits that she executed both the Note and Mortgage in favor of the original lender, World Savings Bank FSB, Plaintiff asserts that she later exercised her right of rescission under TILA on December 10, 2008, purportedly cancelling the loan transaction and invalidating the Note and Mortgage.  (D.E. 1 ¶¶ 19-26, 49-55).  Plaintiff also contends that Wells Fargo's filing of the Foreclosure Action after the alleged rescission amounted to an unlawful debt collection activity under the FDCPA.  (D.E. ¶¶ 27-28, 56-60, 65-67).  Furthermore, Plaintiff purports to assert that the filing of the Foreclosure

---

[6] Wells Fargo provides this summary based upon its good faith effort to decipher Plaintiff's allegations in the Complaint.

[7] Although Plaintiff cites to each of these statutes as providing this Court with jurisdiction over her claims, the allegations in the Complaint appear to pertain only to claims arising under TILA and the FDCPA. Notably, Plaintiff fails to separate her TILA and FDCPA claims into separate counts, which contravenes the requirement that she plead her claim "discretely and succinctly" so that Wells Fargo can adequately "frame a responsive pleading."  *See Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996); FED.R.CIV.P. 10(B).

Action violated the automatic stay imposed by the filing of the Bankruptcy Case in March 2016 (*see* D.E. 1 ¶¶ 29-37, 61-64).

15. As discussed below, the allegations in the Complaint pertain to issues that were decided, or could have been decided, in the Foreclosure Action and which were later affirmed by the state appellate court. Therefore, Plaintiff's Complaint here is merely an improper attempt for a second bite at the proverbial apple and must be dismissed with prejudice as her claims are barred in their entirety under both the *Rooker-Feldman* doctrine and the doctrine of res judicata. Finally, the Foreclosure Action, the Final Judgment, as well as the opinion affirming the Final Judgment and the mandate from the Fifth District Court of Appeal, predated the filing of the Bankruptcy Case. (*See* Ex. 4; Composite Ex. 5). As such, there could be no automatic stay violation.

## MEMORANDUM OF LAW

I. **STANDARD OF REVIEW**

    A. **Standard for a Motion to Dismiss under Rule 12(b)(1)**

16. A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. *See* FED.R.CIV P. 12(b)(1); FED.R.BANKR.P. 7012(b). In a motion to dismiss for lack of subject matter jurisdiction, the movant may attack jurisdiction facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). When a motion to dismiss raises a facial attack on the court's jurisdiction, the court looks to the allegations in the complaint and takes those allegations as true. *See Gesten v. Stewart Law Grp., LLC*,

67 F. Supp. 3d 1356, 1357 (S.D. Fla. 2014). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley*, 524 F.3d at 1233. In the instant case, this Court's lack of jurisdiction is apparent from both the face of the Complaint, as clarified by relevant extrinsic evidence.

### B. Standard for Motion to Dismiss under Rule 12(b)(6)

17. Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Civil Procedure 7012 permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and quotations omitted).

18. More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Further, although *pro se* litigants are afforded some leniency, they are still required to comply with minimum

pleading standards set forth in the Federal Rules of Civil Procedure. *See Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).

19.     Additionally, Wells Fargo seeks dismissal of the Complaint with prejudice because this adversary proceeding is a frivolous attempt to get around two prior state court orders in total violation of the *Rooker Feldman* doctrine. "Ordinarily a [c]omplaint should not be dismissed with prejudice unless it is abundantly clear that the defect in pleading is not curable and the plaintiff cannot, under any theory of law, sustain a viable claim for which relief can be granted. *Walter v. The Celotex Corp. (In re Hillsborough Holdings Corp.)*, 203 B.R. 1000, 1005 (Bankr. Fla. M.D. 1996); *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 349 (11th Cir. 1996) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal quotations omitted); *see, e.g.*, *Harshman v. Hood*, No. 504CV480OC10GRJ, 2005 WL 1228794, at *3 (M.D. Fla. May 24, 2005) (dismissing the amended complaint with prejudice because it failed to state a claim upon which relief could be granted and because the action was frivolous).

20.     Applying the principles set forth above, Wells Fargo asserts that, even construing her *pro se* Complaint in a manner that holds her to a pleading standard that is less stringent, a liberal reading of the Complaint reveals that Plaintiff fails to state a claim upon which relief could be granted that is plausible on its face. Plaintiff's pleading is filled with quotations of various statutes and legal conclusions, but it does not meet the applicable pleading standards. Furthermore, even if Plaintiff had asserted a sufficient factual basis for her claims, Plaintiff cannot prevail on the asserted claims as their merits have already

been conclusively determined in the Foreclosure Action and affirmed by the state appellate court. As such, they are barred by both the *Rooker-Feldman* doctrine and the doctrine of res judicata and should be dismissed.

## II. ARGUMENT

### A. Plaintiff's Claims Constitute an Improper Attack on the Final Judgment under the *Rooker-Feldman* Doctrine.

21. As mentioned before, Plaintiff claims that Wells Fargo's secured lien on the Property was invalid as she purportedly rescinded the Note and Mortgage. However, this exact issue has already been resolved by the state court in the Foreclosure Action and affirmed by the state appellate court. Plaintiff already had the opportunity to challenge the Final Judgment when she filed the Appeal, and she should not be granted another opportunity to challenge the Final Judgment through a collateral attack in this Court.

22. Various rules and doctrines, including the *Rooker-Feldman* doctrine and the Full Faith and Credit Act[8], preclude federal courts, except the United States Supreme Court, from reviewing state court judgments. Specifically, "[t]he *Rooker-Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (emphasis in original). Under this doctrine, federal district courts are precluded from reviewing final judgments of state courts "because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009); *see also Nicholson v. Shafe*, 558 F.3d 1266, 1271 (11th Cir. 2009) (stating federal district courts have "no authority to review final judgments of a state court") (internal quotations omitted).

---

[8] 28 U.S.C. § 1738.

23.     The *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court [non-prevailing parties] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013) (citation omitted).  The analysis under *Rooker-Feldman* involves two inquires: (1) whether the state-court proceedings have ended; and (2) whether the claims are "inextricably intertwined" with the state-court judgment. *Velazquez v. S. Fla. Fed. Credit Union*, 546 Fed. App'x 854, 856-57 (11th Cir. 2013). "[I]f a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended." *Id.* at 857. (internal quotations omitted). Bankruptcy courts diligently follow *Rooker-Feldman* in refusing to re-litigate the state court foreclosure judgments. *See, e.g.*, *In re Bonaventure*, No. 6:09–bk–18649–KSJ, 2010 WL 4286344, at *2 (Bankr. M.D. Fla. Oct. 28, 2010) ("[T]his Court cannot re-litigate the state court foreclosure judgment and cannot trump the state court's ruling. Only the state appellate court can alter the result of the state trial court's judgment.") (internal quotations omitted).

24.     Both inquiries under the *Rooker-Feldman* doctrine are satisfied here. First, with respect to the first prong, the Final Judgment was entered on April 23, 2014 and that judgment was affirmed on December 15, 2015.  (Ex. 4; Composite Ex. 5). Plaintiff filed a motion for rehearing in the Fifth District Court of Appeal, but that motion was denied on January 13, 2016. (Composite Ex. 5 at 2).  Plaintiff did not file a petition for discretionary review to the Florida Supreme Court, thereby concluding the state proceedings with respect to the ability to review the Final Judgment.  *See* Fla. R. App. P. 9.120(b) (providing 30

days after rendition of order by district court of appeal to file petition for discretionary review of that order); *Velazquez*, 546 F. App'x at 857 (explaining state proceedings end for purposes of *Rooker-Feldman* "if the state action has reached a point where neither party seeks further action," such as where the "lower state court issues a judgment and the [non-prevailing] party allows the time for appeal to expire") (citation omitted). Accordingly, the state proceedings have ended and the first *Rooker-Feldman* prong has been satisfied.

25.  Second, all of Plaintiff's claims raised in her Complaint are inextricably intertwined with the state foreclosure proceedings. Particularly, Plaintiff claims that she rescinded the Note and Mortgage, and Wells Fargo was not entitled to enforce either document by filing its foreclosure action. (*See generally* D.E. 1). These are clear attacks on the Final Judgment, which either were or could have been raised during the pendency of the Foreclosure Action. The *Rooker-Feldman* doctrine applies even when the claim was not raised or argued in state court, so long the party had a reasonable opportunity to do so. *See Liedel v Juvenile Ct. of Madison Cnty.*, 891 F.2d 1542, 1545-46 (11th Cir. 1990); *Wood v. Orange Cty.*, 715 F.2d 1543, 1547-48 (11th Cir. 1983); *see also Velardo v. Fremont Inv. & Loan,* 298 F. App'x 890, 892 (11th Cir. 2008) (affirming dismissal of TILA claim under *Rooker-Feldman* doctrine because it was inextricably intertwined with state-court judgment); *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132–33 (11th Cir. 2005) (finding *Rooker-Feldman* deprived federal district court of subject matter jurisdiction over TILA and FDCPA claims following entry of state-court foreclosure judgment); *Dean v. Wells Fargo Home Mortg.*, No. 2:10-cv-564-FtM-29SPC, 2011 WL 1515106, at *3 (M.D. Fla. Apr. 21, 2011) (applying *Rooker-Feldman* doctrine to bar TILA and RESPA claims seeking rescission of mortgage, as such claims could have been raised in state-court

foreclosure action as affirmative defenses or counterclaims). Accordingly the second prong of the *Rooker-Feldman* doctrine is satisfied, and this Court lacks subject matter jurisdiction over the claims Plaintiff has raised in this adversary proceeding.

### B. Alternatively, Plaintiff's Claims are Barred by Res Judicata.

26. In the alternative, Plaintiff's claims are barred by the doctrine of res judicata and should be dismissed with prejudice, as Plaintiff cannot state a cognizable claim for relief on the facts presented.

27. The purpose behind the doctrine of res judicata is that the "full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979) ("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .") (internal quotations omitted). "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

28. When a federal court is asked to give res judicata effect to a state court judgment, the federal court applies the res judicata principles of "the state whose decision is set up as a bar to further litigation." *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (citing *Amey, Inc. v. GulfAbstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985)). "Under Florida law, a judgment on the merits rendered in a former suit

between the same parties on the same cause of action bars the relitigation of every claim which was or could have been raised in that action." *Fla. Trans. Serv., Inc. v. Miami–Dade Cnty*, 757 F.Supp.2d 1260, 1271 (S.D. Fla. 2010). "For res judicata to apply, there must be (1) an identity of the 'thing' sued for; (2) an identity of the cause of action; (3) an identity of the parties to the action; and (4) an identity of the quality or capacity of the persons for or against which the claim is made." *Id.* (citing *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005)).

29.     All of the elements required to invoke res judicata are met in the instant action. First, both suits involve the same Property. The Note and the Mortgage at issue in the instant suit are the same Note and the Mortgage that were foreclosed in the state-court Foreclosure Action. Both Wells Fargo and Plaintiff sought determination of the validity of Wells Fargo's lien and the amount owed on the Note and the Mortgage in connection with the Foreclosure Action. Thus, the first prong of res judicata is satisfied. Second, Plaintiff's instant action arises out of the "same nucleus of operative fact" and is based on the "same factual predicate," which is sufficient to satisfy the second element of res judicata.[9] *See Ragsdale*, 193 F.3d at 1239 ("[I]n general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former

---

[9] In particular, Count II of Plaintiff's Counterclaim in the Foreclosure Action asserted an FDCPA violation based in part on Wells Fargo's filing of that action (Ex. 2 ¶ 19), which appears to be one of the bases for the instant adversary Complaint. (D.E. 1 ¶¶ 27-28, 56-60, 65-67). In addition, Count V of the Counterclaim asserted several TILA violations relating to the underlying mortgage transaction and requested the recoupment of "all payments made under the terms of the loan transactions" (Ex. 2 ¶ 62), which is the same relief she requests here. (D.E. 1 ¶¶ 52, 56). Furthermore, to the extent the allegations in the Complaint may differ from those Plaintiff raised in the Foreclosure Action, they are nevertheless "essentially connected with the subject matter" of the Foreclosure Action, as they are "intertwined with the validity of the loan and mortgage, the rights of those claiming and interest in the [Property], and the propriety of foreclosure." *Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1374 (M.D. Fla. 2014), *aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.*, 626 F. App'x 935 (11th Cir. 2015). All of these issues were adjudicated in favor of Wells Fargo in the Foreclosure Action. (*See* Composite Ex. 3; Ex. 4).

action, that the two cases are really the same claim or cause of action for purposes of res judicata.") (internal quotations omitted).

30. Third, Wells Fargo was the plaintiff in the Foreclosure Action and is the defendant in the instant adversary proceeding. The Foreclosure Complaint filed on January 18, 2013 named several Defendants including: Zorna Corbin a/k/a Zorna S. Corbin (Ex. 1 at 1), and Plaintiff admits in the instant Complaint that the Foreclosure Action was filed against her. (D.E. 1 ¶ 59). Plaintiff participated in the Foreclosure Action by filing an Answer. (*See* Ex. 2). Accordingly, the identity of the parties in this litigation and in the Foreclosure Action cannot be disputed.

31. The fourth, and last, element tests "whether the parties in the state action had the incentive to adequately litigate the claims in the same character or capacity as would the parties to the federal action." *McDonald v. Hillsborough Cnty School Bd.*, 821 F.2d 1563, 1566 (11th Cir. 1987). Plaintiff was properly named as a defendant in the Foreclosure Action. She personally appeared in the Foreclosure Action and had an even greater incentive to litigate her claims in the Foreclosure Action because judgment had yet to be entered and the enforceability of the Note and Mortgage had yet to be decided. Plaintiff now seeks to litigate claims that all parties to the instant action would have litigated in the same character or capacity as those presented or that could have been presented in the prior action. Consequently, this action is barred by the doctrine of res judicata and should be dismissed with prejudice.

### C. Plaintiff's Purported Automatic Stay Violation Claim is Meritless

32. Finally, Plaintiff's claim that the filing of the Foreclosure Action along with all other actions that predate her bankruptcy case violated the automatic stay is meritless.

"The automatic stay provision is one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove [debtors] into bankruptcy." *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (internal quotations and citations omitted); *In re Smith*, 185 B.R. 871, 872 (Bankr. M.D. Fla. 1994). That is why "[t]he automatic stay ensures that the remainder of Congress' statutory scheme can be effectuated by preserving estate assets." *In re Weidenbenner*, 521 B.R. 74, 81 (Bankr. S.D.N.Y 2014); *In re Muhlig*, 494 B.R. 755, 764 (Bankr. S.D. Fla. 2013) ("[O]ne of the primary purposes of the automatic stay is to preserve the assets of the estate for the benefit of all creditors."). Section "362(a) of the Bankruptcy Code enumerates specific acts the Code prohibits while the stay remains in effect . . . ." *Wills v. The Heritage Bank (In re Wills)*, 226 B.R. 369, 377 (Bankr. E.D. Va. 1988); *In re Campbell*, 185 B.R. 628, 630 (Bankr. S.D. Fla. 1995) ("As a general principle, § 362(a) of the Bankruptcy Code imposes an automatic stay against most actions against a debtor or his property . . . ."). It is imposed upon filing of the bankruptcy petition. Specifically, § 362(a), provides as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301 . . . of this title . . . operates as a stay . . . .

33.     Here, Plaintiff asserts the filing of the Foreclosure Action in 2012 violated the automatic stay imposed by the filing of the Bankruptcy Case in March 2016. However, the Foreclosure Action, the entry of the 2014 Final Judgment, as well as the 2015 opinion affirming the Final Judgment and the mandate from the Fifth District Court of Appeal, all predate the filing of the Bankruptcy Case. (*See* Ex. 4; Composite Ex. 5). As such, there could be no automatic stay violation at any time.

## **CONCLUSION**

WHEREFORE, Wells Fargo respectfully requests that this Court enter an order granting Wells Fargo's Amended Motion to Dismiss Verified Adversary Complaint with prejudice and granting any such further relief as the Court deems just and proper.

McGUIREWOODS LLP


By  */s/ Anna Haugen*
    Sara F. Holladay-Tobias (FL Bar No. 0026225)
    Emily Y. Rottmann (FL Bar No. 93154)
    Courtney A. McCormick (FL Bar No. 92879)
    Anna Haugen (FL Bar No. 89555)
    50 N. Laura Street, Suite 3300
    Jacksonville, Florida 32202
    (904) 798-3200
    (904) 798-3207 (fax)
    stobias@mcguirewoods.com
    erottmann@mcguirewoods.com
    cmccormick@mcguirewoods.com
    ahaugen@mcguirewoods.com

*Attorneys and Trial Counsel for Wells Fargo Bank, N.A.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on June 14, 2017.  I also certify that the foregoing document is being served this day on the following via U.S. Mail:

Zorna Corbin
8121 Meadowglen Drive
Orlando, FL  32810

*/s/ Anna Haugen*
Attorney
